UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )    **CRIMINAL ACTION**
**v.**                              )    **NO. 4:18-40034-TSH**
                                    )
**JOSE PEREZ, JR., JOSE E. PEREZ,** )
**CHRISTIAN GARCIA,**               )
         **Defendant.** )
_____ )

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO SUPPRESS EVIDENCE (Docket No. 53, 57, & 69)

**January 2, 2019**

**HILLMAN, D.J.**

      The United States of America (the "Government") charged Jose Perez, Jr. ("Perez Jr."), Jose E. Perez ("Perez"), and Christian Garcia ("Garcia") (collectively, "Defendants") with conspiracy to distribute controlled substances and possession of firearms in furtherance of a drug trafficking crime. Defendants move to suppress all the evidence obtained during the March 23, 2018, stop. For the following reasons, the Court ***denies*** the motions.

## Background

      On March 23, 2018, at approximately 11:35pm, Trooper George D'Amelio ("Trooper D'Amelio") of the Massachusetts State Police was returning home from a duty shift when he observed a gray sedan tailgating another car on Route 2 eastbound. (Docket No. 64-1 at 2). The gray sedan, which was traveling at 75 mph, "abruptly changed lanes, without using a turn signal, from the left lane to the right lane, and cut-off another vehicle traveling in the right lane, nearly causing a collision." (Docket No. 64-1 at 2). The gray sedan "then changed lanes back to the left lane in front of the vehicle that the operator had previously been tailgating nearly causing a

1

collision with the second vehicle." (Docket No. 64-1 at 2). Trooper D'Amelio activated his cruiser's lights and initiated a stop. (Docket No. 64-1 at 2).

Trooper D'Amelio approached the passenger side of the vehicle and asked the driver, Perez Jr., to roll down all the windows. (Docket No. 64-1 at 3). Trooper D'Amelio requested Perez Jr.'s license and registration. (Docket No. 64-1 at 3). As Perez Jr. retrieved these documents, Trooper D'Amelio observed "what appeared to be a clear glassine bag partially sticking out of Perez [Jr.]'s right front pocket." (Docket No. 64-1 at 3). Trooper D'Amelio asked Perez Jr. what he had in the bag. (Docket No. 64-1 at 3). Perez Jr. mumbled and stuttered but did not provide an answer. (Docket No. 64-1 at 3). Trooper D'Amelio then requested that Perez Jr. remove the bag. (Docket No. 64-1 at 3). Perez Jr. complied without objection. (Docket No. 64-1 at 3). Perez, the front passenger, and Garcia, the rear occupant, displayed signs of nervousness as Perez Jr. handed over the bag. (Docket No. 64-1 at 3). The bag contained cocaine packaged in a manner that Trooper D'Amelio believed to be consistent with street-level distribution. (Docket No. 64-1 at 3).

Trooper D'Amelio requested backup, and when another officer arrived on scene, Trooper D'Amelio asked Perez Jr. to exit the vehicle and frisked Perez Jr. for weapons. (Docket No. 64-1 at 3). He found no weapon, but he discovered $1,285 in United States currency on Perez Jr.'s person. (Docket No. 64-1 at 3). Trooper D'Amelio placed Perez Jr. in handcuffs, administered his *Miranda* rights, and secured him in a cruiser. (Docket No. 64-1 at 4). In doing so, he told Perez Jr. that he was not under arrest. (August 23 hearing).

Trooper D'Amelio had Perez (Perez Jr.'s brother) exit the vehicle. (Docket No. 64-1 at 4). As he had done with Perez Jr., Trooper D'Amelio frisked Perez for weapons, handcuffed him, administered his *Miranda* rights, and placed him in a cruiser. (Docket No. 64-1 at 4). He

then had Garcia exit the vehicle. (Docket No. 64-1 at 4). Trooper D'Amelio discovered two golf-ball-sized bags of marijuana while frisking Garcia for weapons. (Docket No. 64-1 at 4).

Trooper Kilimonis arrived on scene with a narcotics dog. (Docket No. 64-1 at 4). To ensure that the dog could safely enter the vehicle, Trooper D'Amelio and Trooper Kilimonis scanned the vehicle for weapons. (Docket No. 64-1 at 4). Trooper Kilimonis found a loaded handgun hidden under a sweatshirt in the backseat. (Docket No. 64-1 at 4). Trooper Kilimonis also found a pistol in the glove compartment. (Docket No. 64-1 at 5). The handgun had been reported as stolen, and the serial number of the pistol had been partially obliterated. (Docket No. 64-1 at 5). The officers subsequently searched the trunk of the vehicle and found a backpack containing approximately one pound of marijuana and dozens of unused plastic baggies. (Docket No. 64-1 at 5).

Defendants were arrested and charged with conspiracy to distribute controlled substances and possession of firearms in furtherance of a drug trafficking crime. They now move to suppress the evidence gathered during the stop. (Docket No. 53, 57, & 69).

## Discussion

A traffic stop is permissible under the Fourth Amendment when an officer has a "reasonable suspicion that a traffic violation has occurred." *United States v. Chaney*, 584 F.3d 20, 24 (1st Cir. 2009). An officer may arrest an individual if he has "probable cause to believe that an individual has committed even a very minor criminal offense in his presence . . . ." *Goddard v. Kelly*, 629 F. Supp. 2d 115, 125 (D. Mass. 2009) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001)). "Once authorized to make a lawful arrest, law enforcement personnel may conduct a warrantless search of the person of an arrestee." *See United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997). Officers may also search the arrestee's vehicle if (1)

3

"the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search" or (2) "it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *See Arizona v. Gant*, 556 U.S. 332, 343 (2009) (internal quotation marks and citations omitted).

Here, Trooper D'Amelio had ample cause to stop Perez Jr. for driving to endanger.[1] He witnessed Perez Jr. tailgate another vehicle, change lanes without signaling, and nearly cause a collision with two other vehicles. (Docket No. 64-1 at 2). Trooper D'Amelio also had probable cause to arrest[2] Perez Jr. and to search him incident to arrest. As Perez Jr. retrieved his license and registration, Trooper D'Amelio observed the glassine bag sticking out of Perez Jr.'s front right pocket. He asked for and received the bag, and he determined that it contained cocaine packaged in a manner consistent with distribution. Because he lawfully detained Perez Jr. based on his possession of cocaine, Trooper D'Amelio did not need a warrant to search Perez Jr.[3] *See Bizier*, 111 F.3d at 217. Moreover, given the way the cocaine was packaged and the cash Perez Jr. carried, Trooper D'Amelio did not need a warrant to search the vehicle. He had ample reason to believe that it would hold additional evidence relevant to the drug-related offenses. *See Gant*,

---

[1] And he could arrest Perez Jr. for this offense without violating the Fourth Amendment. While Massachusetts law does not empower officers to arrest individuals for driving to endanger, "[w]hether a state law limits an officer's power to arrest is irrelevant" to the Fourth Amendment inquiry. *See United States v. Ryan*, 731 F.3d 66, 69 (1st Cir. 2013). Thus, the fact that driving to endanger is not an arrestable offense in Massachusetts has no bearing on whether this Court must suppress the evidence obtained in this case.

[2] Although Trooper D'Amelio stated to Perez Jr. that he was not under arrest for driving to endanger, the Court adopts Defendants' argument to the contrary. (August 23 hearing). Perez Jr. was handcuffed, given his *Miranda* rights, and placed in the back of a cruiser. Of course he was under arrest at the time.

[3] In any event, the search would alternatively be lawful as a pat frisk. Trooper D'Amelio had reason to suspect that Perez Jr. was armed based on his earlier discovery of a bag of cocaine and the link between drug trafficking and firearms. *See Terry*, 392 U.S. at 27.

4

556 U.S. at 343. The Court therefore declines to suppress the evidence obtained from Perez Jr. or the vehicle.

The Court also declines to suppress the evidence obtained from Garcia. Garcia's presence in a car containing cocaine and his visible nervousness as Perez Jr. handed over the bag gave Trooper D'Amelio reasonable suspicion that Garcia might be armed. And, even if Trooper D'Amelio lacked reasonable suspicion that Garcia was armed, the inevitable discovery rule would shelter any evidence recovered from Garcia. The search of the vehicle produced evidence that would have given Trooper D'Amelio probable cause to arrest Garcia, and officers would have recovered the bags of marijuana in a search incident to arrest or an inventory search. *See Nix v. Williams*, 467 U.S. 431, 448 (1984); *United States v. Xiarhos*, 820 F. Supp. 634, 636 (D. Mass. 1993). The Court therefore ***denies*** Defendants' motions.

## Conclusion

For the reasons above, the Court ***denies*** Defendants' motions to suppress. (Docket Nos. 53, 57, & 69).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**